The case as presented by the pleadings is as follows: Joseph Russell, in his last will and testament, bequeathed as follows: "I give to my wife Katy the following negroes: Minerva, Martha and Kate, and all my household and kitchen furniture and farming utensils, as sees proper, during here widowhood, and a sorrel mare and colt, and her choice of four head of cow cattle, and all my stock of hogs and sheep, and my crop of corn, wheat and oats, to dispose of as she may think proper." (115) The remainder in the slaves is in a subsequent clause given to "his lawful heirs." The slaves mentioned in the above clause remained in the possession of the widow until her death, together with their increase, except the woman Kate, who, together with four children (born of her since the death of the testator), were several years since sold by the said widow to one Edward Watlington, who at the filing of the bill held them in his possession by virtue of his said purchase. The woman Minerva has had five children, now living; Martha has had four children and Kate has had four. The widow Katy Russell survived her husband many years and died some four months since, having made and published a last will and testament, and her executor, George W. Swepston, took into his possession Minerva and her children, and now has the same. The testator, Joseph Russell, had five children, to wit: Nancy, Judy, Emily, Thomas, William and Joseph (the last being *Page 79 
posthumous). Shortly after the death of the testator Nancy died intestate in Caswell; several years afterwards Thomas died intestate, and more recently William has died intestate — all three without leaving a child or children or the issue of such. Judith intermarried with the plaintiff and died intestate in Caswell County, upon whose estate the plaintiff has administered. He also took out letters of administration upon the estate of Thomas Russell, and the said George W. Swepston administered on the estates of William and Nancy.
The plaintiff insists in his bill that a life estate only was given to the widow Katy by the will of the said Joseph Russell in the said slaves and their increase, with a remainder to his children, and that on the death of his widow the plaintiff, as administrator of his wife, is entitled to one-sixth part of the said slaves; that he is entitled to another sixth as the administrator of Thomas; that upon the deaths of Nancy, Thomas and William, their surviving mother and brother and sisters became equally entitled to their respective shares; that as Nancy, and Thomas both died before his wife Judy, he is (116) entitled, as the administrator of his wife, to the one-sixth of the share to which Nancy was entitled, and as administrator of Thomas, to one other sixth part of the said Nancy's share; and again that as administrator of his wife he is entitled to one-fifth part of Thomas' share on said negroes, inclusive of the share of one-sixth of Nancy's interest. He further insists that he is a tenant in common with Emily, Joseph Swepston and Watlington of the said slaves, and is entitled to have a division of the same. Emily Corbitt, Joseph Russell, George W. Swepston and Edward Watlington are made defendants. The prayer is for a sale of the slaves for a division, or for a division according to law, and for general relief.
All the defendants answered. Joseph Russell and Emily Corbitt, his sister, after stating the facts of the case with more minuteness, insist that as William Russell survived Thomas, Nancy and plaintiff's wife Judy, he cannot come in for any part of William's share. The answer alleges that William died in Arkansas in the lifetime of the mother, and that by the laws of that State the mother of said William became entitled alone to his estate, but that if the same is distributable under the laws of North Carolina, the plaintiff (his wife having died before William) could take nothing of that share. They, with Swepston and Watlington, insist that Katy Russell, the widow, under the said clause in the will of Joseph Russell, took an absolute estate in these slaves and their increase. Watlington answers that he purchased the negro Kate and the children mentioned above at a fair price and took a bill of sale from the said Catharine or Katy Russell, believing he had a good title, *Page 80 
as he now believes, and denies that he holds the property as tenant in common with the plaintiff.
We think the property mentioned in the first item is divided into two classes. The three negro women, household, kitchen furniture and farming utensils are given to the wife during her widowhood. The mare and colt, stock and crop, are given to her absolutely. In reference to this point there is nothing to control the express limitation, "during her widowhood." The nature of the property will readily suggest the reason for making a difference. The one is of a nature to last some time — the other is perishable. This disposes of the construction contended for by the defendants that the widow took an absolute estate in the negroes, the only property now in controversy.
The plaintiff insisted that under the third item the remainder in the negro woman and their children after the widow's life estate is to be equally divided between the children of the testator or their representatives. The division is to be made, not between all of his children, for whose support he had just provided, but between his "lawfulheirs." The word heirs is not appropriate to the disposition of personal property, and when used in reference to it means those who take by law or under the statute of distribution. This is the rule when there are no other words to give it a different meaning; here the other words fix that to be the meaning, for it is put in opposition to "children." 2 Williams Ex., 726.
The widow was entitled to one-seventh part of the three negro women and their children. This will be declared to be the opinion of the Court.
The prayer is for partition as among tenants in common, but the bill discloses the fact that the defendant Watlington holds one of the women and her children under a purchase of the absolute estate from the (118) widow, and Watlington in his answer sets up title to them in severalty. This question must be disposed of before a decree for partition can be made, for this Court cannot take jurisdiction unless the parties are tenants in common. The bill seems to have been hastily drawn and the cause is set down for hearing on bill and answer, by which the allegation of a claim in severalty, on the part of the defendant Watlington to a part of the claims, is admitted. Upon a suggestion that the main object of the parties is to get a construction of the will in regard to the rights of the widow, the Court makes the declaration as above, and the cause is retained for further directions. The parties may move hereafter as they are advised. *Page 81 
We give no opinion as to the rights of the parties upon a subdivision of the shares of the deceased children. The bill in that particular is multifarious.
Decree accordingly.
Cited: Henderson v. Henderson, 46 N.C. 224; Kiser v. Kiser, 55 N.C. 30.